UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 23-cr-249 (CJN) |
| v. | : | |
| | : | |
| WILLIAM WILKERSON, | : | |
| | : | |
| Defendant | : | |

GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence William Wilkerson to 30 days of incarceration and, consistent with the plea agreement in this case, $500 in restitution.

I.      Introduction

Defendant Wilkerson, 39 years old and a self-employed handyman, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

1

Wilkerson pleaded guilty to violating 40 U.S.C. §§ 5104(e)(2)(G) (Parade, Demonstrate, or Picket in any of the Capitol Buildings). The government's recommendation is supported by the defendant's (1) social media postings bragging about his involvement in the attack on the U.S. Capitol; (2) entrance through an area with broken glass, alarms sounding, and rioters entering through windows; and (3) general lack of remorse for having done so.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Wilkerson's crime support a sentence of 30 days of incarceration and $500 in restitution.

## II.     Factual and Procedural Background

### *The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* DE 15.

### *Defendant Wilkerson's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, Wilkerson, entered the U.S. Capitol Building through the Senate Wing door at approximately 3:24 p.m. (Image 1).



Image 1

Wilkerson then turned southward and, at approximately 3:25 p.m., walked down the

entrance hallway in the direction of the Crypt. While walking, Wilkerson raised what appears to

be a cellphone in a manner consistent with recording photos or video (Image 2).



Image 2

At approximately 3:26 p.m., Wilkerson turned around before reaching the hallway to the Crypt, pulled a covering over his mouth, and walked back toward the Senate Wing Door. (Image 3).



Image 3

Wilkerson waited for approximately three minutes beside the Senate Wing Door, walked towards the hallway to the right where he took some photos, then turnaround and exited the Senate Wing Door at approximately 3:29 p.m. Wilkerson's total time spent inside the Capitol Building was approximately five minutes.

Open-source videos also captured Wilkerson inside the U.S Capitol building. (Image 4).[2]



Image 4

---

[2] Image 4 is a cropped screenshot taken from timestamp [00:01:14] of video "DLive – BakedAlaska - TRUMP RALLY DC-w-QvhT-Gg.mp4 at https://archive.org/download/rTXTrphEFtxRjaDgo/rTXTrphEFtxRjaDgo.mpeg4

4

Wilkerson exited the Senate Wing Door area. In the video, Wilkerson emerged from the position and walked out the doorway. (Image 5).[3]



Image 5

*Wilkerson's Post-Riot Social Media Posts*

On January 6, after the attack on the Capitol, rather than showing remorse, Wilkerson bragged about his involvement in the riot. Wilkerson posted within days of the event a selfie (Image 6) taken near the Washington Monument earlier that day. The post included a comment stating, "I made it here showing my colors."



Image 6

---

[3] Exhibit 11 is a cropped screenshot taken from timestamp [00:07:21] of video "YouTube - The Allen Report (UC5NJlt5YSHA62ozQbD_fe8Q)"

The same day, Wilkerson posted: "Standing up for your rights is also being part of the mass. I did my part today!" (Image 7).



Image 7

The next day, Wilkerson posted, "Real patriots did infiltrate the capitol. I watched it happen. The media is all lies unless they were there." (Image 8).



Image 8

On January 10, Wilkerson shared an image from "Americans Are Pissed" stating, "The Declaration of Independence Says We Have the Right to Overthrow the Government. ... The Declaration of Independence says that we not only have the right but we also have the duty to alter or abolish any government that does not secure our unalienable rights, including life, liberty, and the pursuit of happiness." The shared image also contains the text stating, "IF THAT'S THE CASE, I GUESS NOBODY BROKE THE LAW (rubbing chin emoji)" (Image 9).



Image 9

*Wilkerson's Post-arrest Interview with the FBI*

On June 8, 2023, Wilkerson gave a voluntary post-arrest interview to the FBI. During the interview, he admitted entering the Capitol Building, and claimed he turned around because he saw law enforcement with cans of pepper spray.   Wilkerson falsely claimed that the Capitol Police let the riot happen. While he admitted seeing other rioters enter the building through windows, and saw the broken glass on the ground from shattered Senate windows, Wilkerson denied seeing flashing lights or sirens indicating that he should not be there.   Wilkerson was utterly without remorse for his participation in the riot, saying he was "happy" that something was happening towards the government and claiming that the rioters were "patriots" who were fighting for their rights.

*The Charges and Plea Agreement*

On June 7, 2023, the United States charged Wilkerson by a four-count Complaint with violating 18 U.S.C. §§ 1752 (a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On August 22, 2023, pursuant to a plea agreement, Wilkerson pleaded guilty to Count One of the Information, charging him with a violation of 40 U.S.C. §§ 5104(e)(2)(G) (Parade, Demonstrate, or Picket in any of the Capitol Buildings). By plea agreement, Defendant agreed to pay $500 in restitution to the Architect of the Capitol.

## III.    Statutory Penalties

Wilkerson now faces sentencing for violating 40 U.S.C. §§ 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. The defendant must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 30 days of incarceration and $500 in restitution.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Wilkerson's

participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Wilkerson, the absence of violent or destructive acts is not a mitigating factor. Had Wilkerson engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Wilkerson's case his social media posts the day of the riot as well as days after the riot. In these posts, he shows little remorse for his actions despite the chaos and destruction he saw and to which he contributed. Instead, he openly brags about his involvement in the insurrection, having "done his part" and promoting the false idea that "nobody broke the law." His lack of understanding of and contrition for his acts are troubling.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B. Wilkerson's History and Characteristics

Wilkerson's crimes on January 6 were not his first violations of law. As set forth in the PSR, Wilkerson has a prior history of criminal activity which includes marijuana possession (2009), and battery (2014). While these are relatively old offenses, these charges, along with his current offense, reflects a continued disregard for the law. He has also failed to show a general respect for the law, having failed to file tax returns for the last 9 years. PSR ¶ 68.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on

our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a term of incarceration.  Wilkerson must be deterred from future criminal activity, including any activity similar to that of January 6, 2021.  While he has pled guilty to this offense, his social media postings show that he was proud of his actions, demonstrated little understanding and remorse for the chaos and harm he helped to create or support.  Of note, the PSR indicates that Wilkerson wrote on the interview packet "rebel til the day I die" indicating his

10

continued lack of understanding of and remorse for his actions.  PSR ¶ 62.  This comment is also exacerbated by the fact that he carried on January 6, 2021, a Southern Rebel flag on his back, tied to his neck that day.  Thus, a period of incarceration is warranted, especially given his prior criminal history and his continued attitude towards the law that have not deterred him from subsequent criminal acts.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[4] This Court must sentence Wilkerson based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Wilkerson has pleaded guilty to Count One of the Information, charging him with violating 40 U.S.C. §§ 5104(e)(2)(G).  This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

---

[4] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Derek Sulenta,* 22-CR-340, Judge Chutkan sentenced to 14 days a defendant who spent 47 minutes inside the Capitol building and bragged on social media that day about "breach[ing] the capital (sic) building" and called the events "wild."

In *United States v. Glen Croy,* 21-CR-162, Judge Howell sentenced to 14 days a defendant who entered the Capitol twice remaining inside for 30 minutes the first time and 10 minutes the second time, took selfies, and posted about storming the Capitol on social medial.

In *United States v. Michael Timbrook*, 21-CR-361, Judge McFadden sentenced to 14 days of intermittent confinement a defendant who entered a sensitive area in the Capitol Building—the Office Suite of the Speaker of the House, and expressed pride in his participation on social media, writing, for example, "I'M PROUD of everyone who went in there, even the 30 or so rowdy ones."

While Wilkerson did not remain in the Capitol building as long as the above defendants and did not access sensitive areas inside the Capitol building, his social media postings showed similar misplaced pride in his criminal actions of that day.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its

12

own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095.

## V.   Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[5] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Wilkerson must pay $500 in restitution, which reflects in part

---

[5] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

the role Wilkerson played in the riot on January 6.[6] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Wilkerson's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 11.

## VI.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 30 days of incarceration and $500 in restitution.  Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Wilkerson's liberty as a consequence of his behavior.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      s/ *Joseph Huynh*
JOSEPH H. HUYNH
D.C. Bar No. 495403
Assistant United States Attorney (Detailed)
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401-270

---

[6] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).